**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CARLOS ISRAEL PAREDES QUIROZ,<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ,<br>Superintendent, Plymouth County Correctional Facility; DAVID WESLING,<br>Acting Field Office Director, U.S. Immigration and Customs Enforcement;<br>TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement;<br>KRISTI NOEM, U.S. Secretary of Homeland Security; PAMELA BONDI,<br>U.S. Attorney General,<br><br>Respondents. | Case No. 25-13393<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner Carlos Israel Paredes Quiroz, A#240-554-487, is a 46-year-old asylum seeker from Peru who entered the United States in or near Texas on or around March 2024. Mr. Paredes Quiroz encountered immigration officials who detained him shortly after entering the United States. He was subsequently released from detention and paroled into the country later that same month.

2. Mr. Paredes Quiroz applied for asylum, withholding of removal, and protection under the Torture Convention and was granted employment authorization and a Social Security

Number on January 14, 2025. He settled in Connecticut, where he established residence and worked.

3. Ever since Mr. Paredes Quiroz entered the country, he has complied with the requirements set by Immigration and Customs Enforcement ("ICE") when he was paroled, including providing updates about address changes. He has also diligently complied with required ICE check-ins in-person and by using an app on his phone.

4. In October 2025, Mr. Paredes Quiroz received an unexpected call stating that he was required to appear for an in-person check-in at the ICE Field Office in Hartford, Connecticut on October 21, 2025.

5. At this check-in on October 21, 2025, ICE officers informed Mr. Paredes Quiroz that his parole was revoked and arrested him. ICE then transferred Mr. Paredes Quiroz to the Plymouth County Correctional Facility in Plymouth, Massachusetts, where he remains in the physical custody of Respondents.

6. This arrest is part of a new, nationwide Department of Homeland Security ("DHS") strategy of sweeping up people who attend routine check-ins and detaining them. DHS has implemented a coordinated practice of leveraging immigration detention to strip people like Mr. Paredes Quiroz of their substantive and procedural rights and pressure them into deportation. Immigration detention is civil and thus permissible for only two reasons: to ensure a noncitizen's appearance at immigration hearings and to prevent danger to the community. Neither of these reasons applies here. Instead, as part of its broader enforcement campaign, DHS detained Mr. Paredes Quiroz to strip him of his procedural rights, force him to forfeit his applications for relief, and pressure him into removal.

7. After he was detained, Mr. Paredes Quiroz was placed in removal proceedings. His case has been assigned to Immigration Judge Yul-mi Cho in the Chelmsford Immigration Court in Chelmsford, Massachusetts. His next hearing is scheduled for November 17, 2025, and he is seeking representation in his immigration case.

8. Mr. Paredes Quiroz's arrest and detention have caused him tremendous and ongoing harm. Every additional day Mr. Paredes Quiroz spends in unlawful detention subjects him to further irreparable harm.

9. The Constitution protects Mr. Paredes Quiroz—and every other person present in this country—from arbitrary deprivations of his liberty and guarantees him due process of law. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The government's power over immigration is broad, but as the Supreme Court has declared, it "is subject to important constitutional limitations." *Id.* at 695. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

10. Mr. Paredes Quiroz respectfully seeks a writ of habeas corpus ordering the government to immediately release him from his ongoing, unlawful detention and prohibiting his re-arrest without a hearing to contest that re-arrest before a neutral decisionmaker. In addition, to preserve this Court's jurisdiction, Mr. Paredes Quiroz also requests that this Court order the government not to transfer him outside of the District or deport him for the duration of this proceeding.

## JURISDICTION

11. Jurisdiction is proper, and relief is available pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (original jurisdiction), 5 U.S.C. § 702 (waiver of sovereign immunity), 28 U.S.C. § 2241 (habeas corpus jurisdiction), and Article I, Section 9, clause 2 of the United States Constitution (Suspension Clause).

12. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

13. Venue lies in the United States District Court for the District of Massachusetts, the judicial district in which Mr. Paredes Quiroz is currently detained. 28 U.S.C. §§ 2241(d), 1391(b)(2); *see Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493–500 (1973).

## PARTIES

***Petitioner***

14. Petitioner Carlos Israel Paredes Quiroz, A#240-554-487, was arrested by ICE agents on or about October 21, 2025, in Hartford, Connecticut. He has been in immigration detention in Plymouth County Correctional Facility, in Plymouth, Massachusetts, since that date without a bond hearing.

***Respondents***

15. Respondent Antone MONIZ is the Superintendent of Plymouth County Correctional Facility, where Mr. Paredes Quiroz is detained. He has immediate physical custody of Mr. Paredes Quiroz. He is sued in his official capacity.

16. Respondent David WESLING is the Acting New England Field Office Director of ICE. As such, he is the custodian of all persons detained by ICE in Massachusetts. He is Mr. Paredes Quiroz's immediate custodian and is responsible for Mr. Paredes Quiroz's detention. He is sued in his official capacity.

17. Respondent Todd LYONS is the Acting Director of ICE, a federal law enforcement agency within DHS. ICE's responsibilities include operating the immigration detention system. In his capacity as ICE Acting Director, Respondent Lyons exercises control over and is a custodian of persons detained by ICE nationally.

18. Respondent Kristi NOEM is the Secretary of DHS. She is responsible for the implementation and enforcement of the Immigration and Nationality Act and oversees ICE, which is responsible for Mr. Paredes Quiroz's detention. Respondent Noem has ultimate custodial authority over Mr. Paredes Quiroz. She is sued in her official capacity.

19. Respondent Pamela BONDI is the Attorney General of the United States. She is responsible for the Department of Justice, of which the Executive Office for Immigration Review ("EOIR") and the immigration court system it operates is a component agency. She is sued in her official capacity.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

20. There is no statutory requirement for Mr. Paredes Quiroz to exhaust administrative remedies. *See Gomes v. Hyde*, No. 25-11571, 2025 WL 1869299, at *4 (D. Mass. July 7, 2025) ("[E]xhaustion is not required by statute in this context.").

21. Accordingly, there is no requirement for Mr. Paredes Quiroz to request and be denied a bond hearing before pursuing this Petition. *See Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) (explaining that, where statutory exhaustion is not required,

administrative exhaustion is not required in situations of irreparable harm, futility, or predetermined outcome).

22. Mr. Paredes Quiroz is being irreparably harmed by his ongoing unlawful detention without a bond hearing. *See Aguiriano Romero v. Hyde*, No. 25-11631, 2025 WL 2403827, at *6–8 (D. Mass. Aug. 19, 2025) (no exhaustion required because "[o]bviously, the loss of liberty is a . . . severe form of irreparable injury" (internal quotation marks omitted)); *Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010) (declining to require administrative exhaustion, including because "[a] loss of liberty may be an irreparable harm"); *cf. Brito v. Garland*, 22 F.4th 240, 256 (1st Cir. 2021) (citing *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986), for proposition that "'[e]xhaustion might not be required if [the petitioner] were challenging her incarceration . . . or the ongoing deprivation of some other liberty interest'").

## LEGAL BACKGROUND

***The Constitution Protects Noncitizens Like Mr. Paredes Quiroz from Arbitrary Arrest and Detention.***

23. First¸ "[t]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), including "the exercise of power without any reasonable justification in the service of a legitimate government objective," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998). These due process protections are both substantive and procedural.

24. These protections extend to noncitizens facing detention, as "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Accordingly, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—

lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

25. Substantive due process thus requires that all forms of civil detention—including immigration detention—bear a "reasonable relation" to a non-punitive purpose. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972). The Supreme Court has recognized only two permissible non-punitive purposes for immigration detention: ensuring a noncitizen's appearance at immigration proceedings and preventing danger to the community. *Zadvydas*, 533 U.S. at 690–91.

26. Second, the procedural component of the Due Process Clause prohibits the government from imposing even permissible physical restraints without adequate procedural safeguards. Generally, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). This is so even in cases where that freedom is lawfully revocable. *See Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017) (citing *Young v. Harper*, 520 U.S. 143, 152 (1997) (re-detention after pre-parole conditional supervision requires pre-deprivation hearing); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context)).

27. After an initial release from custody on conditions, even a person paroled following a conviction for a criminal offense for which they may lawfully have remained incarcerated has a protected liberty interest in that conditional release. *Morrissey*, 408 U.S. at 482.

28. This reasoning applies with equal if not greater force to people released from civil immigration detention at the border, like Mr. Paredes Quiroz. *See Addington v. Texas*, 441 U.S. 418, 425 (1979) (recognizing that "civil commitment for any purpose constitutes a

significant deprivation of liberty that requires due process protection”). Indeed, a non-citizen’s “private interest” in freedom from immigration detention “is substantial, arguably the most important [interest] there is.” *Rincon v. Hyde*, -- F. Supp. 3d --, No. CV 25-12633-BEM, 2025 WL 3122784, at *9 (D. Mass. Nov. 7, 2025) (discussing the liberty interests of a noncitizen paroled from detention at the border). After all, noncitizens living in the United States like Mr. Paredes Quiroz have a protected liberty interest in their ongoing freedom from confinement. *See Zadvydas*, 533 U.S. at 690. *See also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (granting habeas petition, noting the significant liberty interest of noncitizens released from immigration custody, and enjoining ICE from re-arresting the noncitizen without a hearing with adequate notice).

## <u>FACTUAL ALLEGATIONS</u>

29. Petitioner Carlos Israel Paredes Quiroz is an asylum seeker from Peru who fled Peru to escape death threats.

30. Mr. Paredes Quiroz entered the United States in or around March 2024 at the Texas border and encountered immigration officials who detained him shortly thereafter. Mr. Paredes Quiroz was then released from detention and paroled into the country for humanitarian reasons on or around March 18, 2024. In granting him release from detention, DHS determined that he posed little if any risk of flight or danger to the community. Mr. Paredes Quiroz thereafter moved to Connecticut where he has friends.

31. When Mr. Paredes Quiroz was paroled into the United States, ICE placed him on an ankle monitor. Then, following a check-in with ICE a few weeks later, the ankle monitor was removed, and ICE told Mr. Paredes Quiroz that he needed to download an app on his phone for future check-ins.

32. ICE instructed Mr. Paredes Quiroz to complete phone check-ins about once a month, whenever the alarm on the ICE app went off. Mr. Paredes Quiroz was required to send a photo of himself and answer a list of questions, including notifying ICE of any address changes.

33. Mr. Paredes Quiroz complied with these requirements.

34. Mr. Paredes Quiroz applied for asylum, withholding of removal, and relief under the Convention Against Torture, and on January 14, 2025, Mr. Paredes Quiroz was granted employment authorization and was issued a social security card. His employment authorization is valid until January 13, 2030.

35. In October 2025, Mr. Paredes Quiroz received an unexpected phone call from ICE stating that he needed to appear in-person at the ICE Field Office in Hartford, Connecticut.

36. On or about October 21, 2025, Mr. Paredes Quiroz appeared at the Hartford ICE Field Office for his in-person check-in. At that check-in, ICE told Mr. Paredes Quiroz that his parole was terminated and that they were detaining him.

37. At no point did ICE issue Mr. Paredes Quiroz a notice of changed circumstances justifying the revocation of his parole.

38. On the same day that Mr. Paredes Quiroz was detained, ICE transferred him to the Plymouth County Correctional Facility in Plymouth, Massachusetts. Mr. Paredes Quiroz remains detained at Plymouth in custody of the Respondents.

39. Since detaining Mr. Paredes Quiroz, ICE has pressured him to voluntarily self-deport instead of pursuing his meritorious asylum, withholding of removal, and Convention Against Torture claims.

40. ICE placed Mr. Paredes Quiroz in removal proceedings before the Chelmsford Immigration Court pursuant to 8 U.S.C. § 1229a. ICE has charged Mr. Paredes Quiroz with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who is present in the United States without admission or parole and under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as someone who is inadmissible due, *inter alia*, to the lack of valid entry documents.

41. At no point prior to Mr. Paredez Quiroz's arrest by ICE was Mr. Paredes Quiroz given a pre-deprivation hearing with adequate notice as required by due process. His detention impermissibly deprives him of his liberty.

## CLAIM FOR RELIEF

***Mr. Paredes Quiroz's Detention Violates His Fifth Amendment Right to Due Process***

42. Mr. Paredes Quiroz incorporates by reference the allegations of fact set forth in the preceding paragraphs.

43. The Government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

44. Mr. Paredes Quiroz has a fundamental interest in liberty and being free from official restraint.

45. The Respondents' revocation of Mr. Paredes Quiroz's parole without explanation and without providing Mr. Paredes Quiroz an opportunity to respond violates his right to Due Process. *See Rincon*, 2025 WL 3122784, at *10 (holding that re-detention without a bond hearing of a noncitizen released on parole violated due process).

## PRAYER FOR RELIEF

WHEREFORE, Mr. Paredes Quiroz asks that this Court grant the following relief:

a. Assume jurisdiction over this matter;

b. Order that Mr. Paredes Quiroz shall not be transferred outside the District of Massachusetts or deported pending these proceedings;

c. Declare that Mr. Paredes Quiroz's detention is unlawful;

d. Issue a Writ of Habeas Corpus requiring Respondents to release Mr. Paredes Quiroz immediately, or in the alternative, to provide Mr. Paredes Quiroz with a bail hearing before this Court, or in the alternative, to provide Mr. Paredes Quiroz with a bond hearing before an Immigration Judge;

e. Enjoin Respondents from re-detaining Mr. Paredes Quiroz unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Mr. Paredes Quiroz is a flight risk or danger to the community;

f. Award Mr. Paredes Quiroz attorney's fees and costs under the Equal Access to Justice Act, as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

g. Grant any other and further relief that this Court deems just and proper.

Respectfully submitted November 13, 2025.

*/s/ Sabrineh Ardalan*

Sabrineh Ardalan (BBO# 706806)
Sameer Ahmed (BBO # 688952)
Caroline Casey, Law Student
Hannah Levine, Law Student

Ted Parker, Law Student
Allison Singleton, Law Student
Brayden Soffa, Law Student

Harvard Immigration and Refugee
Clinical Program
Harvard Law School
6 Everett Street
Cambridge, MA 02138
T: (617) 384-7504
F: (617) 495-8595
sardalan@law.harvard.edu
sahmed@law.harvard.edu

*Pro Bono Counsel for Petitioner*